UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. HENRICHS, MYRON S. ALEXANDER, ROBERT PELUSO, JOSEPH RIZZO, and JEFFREY L. SPICER, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ILLINOIS LAW ENFORCEMENT TRAINING AND STANDARDS BOARD, VALERIE L. SALMONS, PATRICK HARTSHORN, JOHN H. SCHLAF, TIM BECKER, TIMOTHY NUGENT, LAUREL LUNT PRUSSING, RICHARD WATSON, BRENT FISCHER, TIM GLEASON, DARRYL STROUD, PAUL D. WILLIAMS, JAN W. NOBLE, LISA MADIGAN, GARRY McCARTHY, THOMAS DART, SEAN M. COX, DOROTHY BROWN, MICHAEL SCHLOSSER, LEO SCHMITZ, and DONALD STOLWORTHY, <br><br> Defendants. | 15 C 10265 <br><br> Judge Gary Feinerman |

### Memorandum Opinion and Order

In this putative class action under 42 U.S.C. § 1983, William Henrichs, Myron Alexander, Robert Peluso, Joseph Rizzo, and Jeffrey Spicer—all retired Cook County or DuPage County Sheriff's Deputies—allege that the Illinois Law Enforcement Training and Standards Board and Cook County Sheriff Thomas Dart violated their rights under the Fourteenth Amendment and the Law Enforcement Officers Safety Act, 18 U.S.C. § 926C, by refusing to verify that they qualify for concealed carry permits as retired law enforcement officers. Doc. 54. The Board and Dart move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint. Docs. 58, 63. The complaint is dismissed under Rule 12(b)(6), and because the grounds for dismissal cannot be cured, the dismissal is with prejudice.

1

**Background**

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Plaintiffs' favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

The Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926C, gives retired law enforcement officers satisfying certain requirements the right, notwithstanding any state or local law to the contrary, to carry a concealed weapon. One such requirement is that the retired officer meet LEOSA's definition of "qualified retired law enforcement officer." *See id*. § 926C(a), (c)(2). The other is that the retired officer possess an "identification," issued by the officer's former law enforcement agency, that "identifies the person as having been employed as a police officer or law enforcement officer" and that certifies that the officer has recently had the requisite training. *See id*. § 926C(a), (d).

Illinois law commits to the Illinois Law Enforcement Training and Standards Board ("Board") the responsibility under the Illinois Retired Officer Concealed Carry ("IROCC")

program to certify—or, as the case may be, to decline to certify—"qualified retired law enforcement officer[s]" for eligibility under the program. 50 ILCS 705/10; 20 Ill. Admin. Code § 1720.200 *et seq*. The term "qualified retired law enforcement officer" under the Board's regulations incorporates the term "law enforcement officer" from the same regulations, which is defined to mean "any police officer of a governmental agency who is primarily responsible for prevention or detection of crime and the enforcement of a criminal code or traffic or highway laws of any state or any political subdivision." 20 Ill. Admin. Code § 1720.220. This definition of "law enforcement officer" mirrors the definition set forth in the Illinois Police Training Act, 50 ILCS 705/2, although, as will be seen shortly, it is narrower than LEOSA's definition of "qualified retired law enforcement officer."

Henrichs, Alexander, Peluso, and Rizzo ("Cook County Plaintiffs") retired in good standing after at least ten years' service as Cook County Deputy Sheriffs. Doc. 54 at ¶¶ 10-16, 46. Each was assigned to correctional or court service. *Id*. at ¶ 44. In 2013 and 2014, each applied to the Board for IROCC eligibility. *Id*. at ¶¶ 157-165. The Board denied their applications in October 2015, explaining as to each that the Cook County Sheriff's Office "indicated that he did not attend an approved law enforcement academy and therefore, he was not issued a law enforcement certificate" and could not "verify that he was a police officer under the definition of the [Illinois] Police Training Act and the corresponding IROCC rules." Docs. 54-2, 54-3, 54-4, 54-5.

Spicer retired in good standing after at least ten years' service as a DuPage County Deputy Sheriff, after having been assigned to correctional or court service. Doc. 54 at ¶¶ 18, 44, 46. The Board revoked Spicer's IROCC eligibility in April 2016, informing him that "[s]ervice

3

as a Correctional Officer does not meet the definition of law enforcement under Illinois law and Administrative Rules." Doc. 54-6.

Plaintiffs allege that the Board deprived them of their LEOSA right to carry a concealed firearm by refusing to verify that they are "qualified retired law enforcement officers." Doc. 54 at ¶¶ 181-195, 211-220. They also allege that the Board's refusal violated their procedural due process rights by depriving them of their property interest in the concealed carry permits for which they applied. Doc. 67 at 7-15. Plaintiffs further allege that the Board violated the Equal Protection Clause by arbitrarily treating them differently from other Sheriff's Deputies who received IROCC certification. Doc. 54 at ¶¶ 235-240. Finally, Cook County Plaintiffs allege that the Board and Dart conspired to deprive them of their federal rights. *Id*. at ¶¶ 241-254. Plaintiffs seek a declaration that they qualify for concealed carry permits, an injunction directing Defendants to issue certifications to that effect, and damages. *Id*. at ¶¶ 210, 220, 237, 240, 254.

## Discussion

### I. Subject Matter Jurisdiction

Plaintiffs premise federal jurisdiction on 28 U.S.C. § 1331, which gives the district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Doc. 54 at ¶ 4. Defendants argue that Plaintiffs' LEOSA claims actually arise under state law because the crux of the suit is whether correctional and court officers like Plaintiffs qualify as "law enforcement officers" under Illinois law. Doc. 58 at 5; Doc. 63 at 7.

As an initial matter, Defendants' jurisdictional argument is of no moment. Plaintiffs' federal equal protection and procedural due process claims indisputably arise under § 1331, so even if their LEOSA claim were a state law claim, the court could entertain it under the supplemental jurisdiction, 28 U.S.C. § 1367(a). The LEOSA claim is a federal claim in any

4

event.  Plaintiffs allege not that they meet the definition of "qualified retired law enforcement officer" under Illinois law, but rather that the Board's refusal to certify them as qualified retired law enforcement officers for a concealed carry permit—whether or not correct as a matter of Illinois law—violates LEOSA.  Doc. 54 at ¶¶ 34-35.  A claim that a defendant violated a plaintiff's federal rights gives rise to federal question jurisdiction under § 1331.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) ("In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases … .").

## II.     Merits

### A.     LEOSA Claim

The gist of Plaintiffs' LEOSA claim is that the Board (Dart can be ignored for present purposes) has adopted a narrower definition of "qualified retired law enforcement officer" than has LEOSA, thereby depriving Plaintiffs of the "right to carry concealed firearms" that LEOSA guarantees them.  Doc. 54 at ¶¶ 70-72.  LEOSA defines "qualified retired law enforcement officer," in relevant part, as "an individual who … was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, *or the incarceration of any person for*, any violation of law … ."  18 U.S.C. § 926C(c)(2) (emphasis added).  The emphasized language includes those individuals, like Plaintiffs, who served in corrections.  The definition of "qualified retired law enforcement officer" under Illinois law is narrower; as noted above, it incorporates Illinois's definition of "law enforcement officer," which in turn means "any police officer of a governmental agency who is primarily responsible for prevention or detection of crime and the enforcement of a criminal code or traffic or highway laws of any state

5

or any political subdivision." 20 Ill. Admin. Code § 1720.220. Unlike the federal definition, the Illinois definition does *not* include officers who worked in a correctional environment.

That is precisely the ground on which the Board rested its denial of Plaintiffs' IROCC applications—Plaintiffs worked as Sheriff's Deputies in corrections, not in any of the capacities referenced by the Illinois definition. Plaintiffs allege that the Board's exclusion of them from the IROCC program violated their LEOSA right to a concealed carry permit because, regardless of what Illinois law might say, they are "qualified retired law enforcement officers" under LEOSA. And they seek to use § 1983 as the vehicle to enforce what they believe to be their LEOSA rights. Doc. 67 at 5-7; Doc. 75 at 3-6.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). "In order to seek redress through § 1983," however, "a plaintiff must assert the violation of a federal *right*, not merely a violation of a federal law." *Ibid.* Under *Blessing* and like cases, a federal statute gives rise to a federal right enforceable under § 1983 only if these three conditions are met:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id*. at 340-41; *see also Gonzaga University v. Doe*, 536 U.S. 273, 282 (2002); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820 (7th Cir. 2017). The question here is whether LEOSA satisfies those three conditions.

LEOSA states, in relevant part:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer *and* who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 926C(a) (emphasis added). Thus, LEOSA grants a person concealed carry rights only if that person (1) is a "qualified retired law enforcement officer" as defined by LEOSA *and* (2) "is carrying the identification required by subsection (d)."

Therein lays the flaw in Plaintiffs' LEOSA claim. LEOSA does not give concealed carry rights to *any* individual who satisfies its definition of "qualified retired law enforcement officer." Rather, LEOSA gives such rights to a "qualified retired law enforcement officer" *only* if that individual has "the identification required by subsection (d)." *Id*. § 926C(a). Subsection (d), in turn, states that "the identification" is "a photographic identification *issued by the agency from which the individual separated from service as a law enforcement officer* that identifies the person as having been employed as a police officer or law enforcement officer" and that certifies that the individual recently had the requisite firearms training. *Id*. § 926C(d) (emphasis added). Under LEOSA, then, if a retired officer does not have an identification issued by the officer's former agency, then the officer has no concealed carry rights under LEOSA, even if she is a "qualified retired law enforcement officer" under LEOSA.

This has implications for whether Plaintiffs may enforce under § 1983 what they believe to be their LEOSA rights. Recall the first *Blessing* requirement, that "Congress must have intended that the provision in question benefit the plaintiff." 520 U.S. at 340. Although Congress may have intended that LEOSA benefit *some* retired law enforcement officers, it did not intend that LEOSA benefit *our* Plaintiffs, for while they may be "qualified retired law enforcement officers" under LEOSA, they do not have the required agency-issued identification. *See Johnson v. N.Y. State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 185 (N.D.N.Y. 2010)

7

("[P]laintiffs are not presently a member of the class of individuals … whom LEOSA was intended to benefit because they concede that they do not possess the requisite identification."); *see also Friedman v. Las Vegas Metro. Police Dep't*, 2014 WL 5472604, at *4-5 (D. Nev. Oct. 24, 2014) (same); *Moore v. Trent*, 2010 WL 5232727, at *4 (N.D. Ill. Dec. 16, 2010) (same).

Nor does LEOSA clear the third *Blessing* requirement, that "the statute must unambiguously impose a binding obligation on the States." 520 U.S. at 321. Plaintiffs point to nothing in LEOSA, and the court on its own has found nothing, *obligating* States to issue subsection (d) identifications to anybody, even to individuals meeting the federal definition of "qualified retired law enforcement officer." *See Zarrelli v. Rabner*, 2007 WL 1284947, at *2-3 (N.J. App. May 3, 2007) ("[LEOSA] does not … require a State to issue a certification in order to permit an individual to qualify under the statute."). To the contrary, LEOSA expressly allows States to adopt their own standards in deciding to whom subsection (d) identifications will be issued. *See* 18 U.S.C. § 926C(d)(2)(B)(I) (providing that the required identification must indicate that the former officer has met "the active-duty standards for firearms training, *as established by the State*, to carry a firearm of the same type as the concealed firearm") (emphasis added); *see also Friedman*, 2014 WL 5472604, at *4 ("[N]o private right of action exists under LEOSA because Congress explicitly intended for states to establish and enforce their own concealed firearm certification standards."); *Moore*, 2010 WL 5232727, at *4 (holding that LEOSA "preserve[s] the States' authority in establishing eligibility requirements for qualified retired law enforcement officers," and that subsection (d) "constitutes a reservoir of powers set aside for the States"); *Johnson*, 709 F. Supp. 2d at 186 ("[T]he creation of a federal remedy would be inconsistent with LEOSA's statutory scheme because Congress left the states with the authority to issue concealed firearm certifications."). Absent an obligation on the States to issue

8

subsection (d) identifications, there is no enforceable right to such an identification under § 1983. *See BT Bourbonnais Care*, 866 F.3d at 822 (noting that, to satisfy the third *Blessing* requirement, "the statute cannot leave any room for discretion on the part of the state").

Under the Tenth Amendment, it could not be any other way. In *Printz v. United States*, 521 U.S. 898 (1997), the Supreme Court invalidated under the Tenth Amendment certain Brady Act provisions that required local law enforcement officers to perform background checks on prospective handgun owners. The Act directed the "chief law enforcement officer" in the prospective gun owner's place of residence to "make a reasonable effort to ascertain within 5 business days whether receipt or possession [of a handgun] would be in violation of the law," including by searching a federal database and any available state and local recordkeeping systems. *Id*. at 903 (quoting 18 U.S.C. § 922(s)(2)). The officer had no obligation "to take any particular action if he determine[d] that a pending transaction would be unlawful," but if he chose to notify a gun dealer that a prospective purchaser was ineligible to own a gun, he was required to "provide the would-be purchaser with a written statement of the reasons for that determination." *Ibid*. Additionally, if the officer determined that a purchase would be lawful, the Act required him to "destroy any records in his possession relating to the transfer." *Id*. at 904. The Supreme Court struck down this scheme, reasoning that the Tenth Amendment prohibited Congress from "forc[ing] participation of the States' executive in the actual administration of a federal program." *Id*. at 918; *see also Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650, 662 (7th Cir. 2004) ("Congress may no more command the State's officers … to administer or enforce a federal regulatory program than it may command State legislatures to do so.") (internal quotation marks omitted); *Travis v.*

*Reno*, 163 F.3d 1000, 1003 (7th Cir. 1998) ("When the national government conscripts the legislative or executive arms of a state, the law violates a structural immunity.").

Illinois, of course, has elected to establish the IROCC program to implement LEOSA. But *Printz* and its progeny would have enabled Illinois to decline to play any role in implementing LEOSA, including to decline to issue *any* subsection (d) identifications, and that greater power includes the lesser power of deciding to whom Illinois will give subsection (d) identifications. (If LEOSA had been enacted pursuant to Congress's power under the Spending Clause, Illinois's choices might have been more limited, *see Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), but LEOSA is not a Spending Clause statute.) Accordingly, if Plaintiffs could sue under § 1983 to compel the Board to issue subsection (d) identifications to them, then LEOSA would effectively dragoon state officials into administering a federal law, which *Printz* prohibits. *See Johnson*, 709 F. Supp. 2d at 188 ("*Printz* renders Congress unable to legislatively require the defendants to certify that the plaintiffs have met New York's standards for carrying a firearm of the same type as the concealed firearm."); *Zarrelli*, 2007 WL 1284947, at *2-3 (same). In any event, *Printz* does not come into play because, as shown above, LEOSA in fact does not require state officials to issue subsection (d) identifications.

In holding that Plaintiffs may not use § 1983 to enforce LEOSA, and indeed have no LEOSA rights to enforce, the court acknowledges that the D.C. Circuit reached the contrary conclusion in *DuBerry v. District of Columbia*, 824 F.3d 1046 (D.C. Cir. 2016). The D.C. Circuit reasoned that "the identification requirement under subsection (a) does not does not define the category of individual entitled to the LEOSA right to carry, but is simply a prerequisite to the exercise of an existing right under the LEOSA." *Id*. at 1051; *see also id*. at 1055 ("[T]he firearms certification requirement does not define the right itself but is rather a

precondition to the exercise of that right"). As shown above, LEOSA's text defeats that reading, as the statute provides concealed carry rights to any individual "who is a qualified retired law enforcement officer *and* who is carrying the identification required by subsection (d)." 18 U.S.C. § 926C(a) (emphasis added). There is no textual basis for treating "qualified retired law enforcement officer" as the sole requirement for obtaining LEOSA rights; rather, such an individual also must have a subsection (d) identification. Both criteria are necessary, not sufficient, conditions for coverage under LEOSA, and only individuals who satisfy both may enforce their statutory rights under § 1983. Moreover, *DuBerry*, which concerned a challenge to the District of Columbia's concealed carry program, did not have to squarely address *Printz* because the District is not a State and therefore is not protected from federal encroachment by the Tenth Amendment. *See* 824 F.3d at 1057.

One might ask whether the court's holding renders LEOSA a dead letter. Not at all. LEOSA enables retired law enforcement officers who qualify for concealed carry permits in States where they worked to carry their weapons in any State, regardless of whether the officer would be entitled to a permit in that State. The statutory text, particularly given the placement of "any" before "State," is clear on this point: Once a "qualified retired law enforcement officer" obtains "the identification required by subsection (d)" from the agency where she used to work, she has satisfied LEOSA's two requirements and, "[n]otwithstanding any other provision of the law of *any* State or any political subdivision thereof … , may carry a concealed firearm." 18 U.S.C. § 926C(a) (emphasis added); *see Friedman*, 2014 WL 5472604, at *5 ("Rather than affirmatively requiring states to issue concealed carry licenses to retired police officers, LEOSA merely permits retired officers who already possess a concealed-carry permit to bring a concealed firearm across state lines."). That right was especially meaningful at the time LEOSA

11

was enacted in 2004, when seventeen States still completely prohibited concealed carry. *See DuBerry*, 824 F.3d at 1052. And it remains meaningful today, as a concealed carry permit issued by one State does not necessarily entitle the permit holder to carry her weapon in another State. *See Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013) ("Washington State does not provide reciprocity to Colorado [concealed handgun licenses], and thus Peterson's Washington-issued [license] is not recognized by Colorado.").

### B. Procedural Due Process Claim

Plaintiffs attempt to formulate a procedural due process claim in one of their briefs. Doc. 67 at 7-15. The operative complaint does not mention procedural due process, but because a complaint need not articulate *any* legal theories, a plaintiff may oppose a motion to dismiss by invoking a legal theory that does not appear in the complaint. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory."). Still, Plaintiffs' procedural due process claim fails on the merits.

"To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). "To claim a property interest protected by the Fourteenth Amendment, a person must have more than a unilateral expectation of the claimed interest. He must, instead, have a legitimate claim of entitlement to it." *Ibid*. (internal quotation marks and alterations omitted). Plaintiffs contend that they possess a "legitimate claim of entitlement to their status as law enforcement officers and to its specific retirement benefit, to wit: an IROCC card issued pursuant to [LEOSA]." Doc.

67 at 12. That theory fails for the reasons that the LEOSA claim fails: LEOSA gives them no right to, and thus no property interest in, the concealed carry permits that they seek.

Nor do Plaintiffs have a state law entitlement to the concealed carry permits or their "status as law enforcement officers." As explained above, Illinois was free to adopt whatever definition of "qualified retired law enforcement officer" it wished for purposes of the IROCC program, and Plaintiffs do not dispute that they fail to meet the Board's definition.

### C. Equal Protection Claim

When a plaintiff bases an equal protection challenge on his membership in a suspect class or the denial of a fundamental right, the government's justification for the regulation must satisfy heightened scrutiny. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). "In the absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is rational basis." *Ibid*. Here, Plaintiffs do not allege that they are members of a suspect class. They assert a "fundamental right to their property [interest]" in the concealed carry permits, Doc. 67 at 8, 15, but, as noted, they have no such property right. Plaintiffs do not contend that they have a fundamental right under the Second Amendment to carry concealed firearms, and therefore have forfeited any such argument. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal

quotation marks omitted); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008) ("[W]here a party raises a specific argument for the first time on appeal, it is waived even though the 'general issue' was before the district court."). Rather than relying on the Second Amendment, Plaintiffs argue that there was "no rational basis" for denying concealed carry permits to Sheriff's Deputies who, like them, worked in corrections or court service, while at the same time granting permits to other officers. Doc. 67 at 15-16; Doc. 75 at 8-10.

To prevail under rational basis review, Plaintiffs must prove "that (1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest." *Srail*, 588 F.3d at 943. In applying such review, the court does not require the government "to actually articulate the law's purpose or produce evidence to sustain the rationality of the classification." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013) (internal quotation marks omitted). Rather, the court will uphold the government's act "if there is any reasonably conceivable state of facts" that supports it. *Ibid*. (internal quotation marks omitted).

Plaintiffs' own pleadings establish that the Board's refusal to confirm their eligibility for concealed carry permits was rationally related to a legitimate government interest. Plaintiffs were assigned to corrections or court service during their careers as Sheriff's Deputies, and the Board determined that they do not qualify as "law enforcement officers" under its regulations, which cover only those officers primarily responsible for the prevention or detection of crime. Doc. 54 at ¶ 44; Docs. 54-2, 54-3, 54-4, 54-5; 54-6. The Board may have reasonably concluded that officers who had been responsible for preventing and detecting crime would have more experience and training than correctional and court officers in handling firearms, making them

14

better qualified to carry a concealed firearm in retirement. Adopting that distinction is reasonably related to Illinois's interest in protecting the public from the potential danger posed by concealed firearms. *See District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008) (noting that a total ban on handgun possession in the home, "like almost all laws, would pass rational-basis scrutiny," though proceeding to hold that rational basis scrutiny did not apply to the Second Amendment challenge to such a ban).

### D. Conspiracy Claim

As noted, Cook County Plaintiffs claim that the Board and Dart conspired to deprive them of their federal rights. Doc. 54 at ¶¶ 241-254. Because Cook County Plaintiffs have no viable LEOSA, due process, or equal protection claim, their conspiracy claim fails as well. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions"); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("The jury's conclusion that the Cefalus suffered no constitutional injury thus forecloses relief on the conspiracy claim.").

## Conclusion

Defendants' Rule 12(b)(1) motions are denied, but their Rule 12(b)(6) motions are granted. Plaintiffs' claims are dismissed, and because the flaws in their claims cannot be cured with repleading, the dismissal is with prejudice. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend ... where the amendment would be futile."). Although Plaintiffs have no right under LEOSA or the Fourteenth Amendment to a concealed carry permit, they of course remain entitled under Illinois law to apply for a concealed carry permit in the ordinary course. *See Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (holding that Illinois's prior ban on carrying firearms in public

15

violated the Second Amendment); 430 ILCS 66/1 *et seq*. (the Illinois Firearm Concealed Carry Act).

January 26, 2018

_____
United States District Judge